UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIVE STAR GOURMET FOODS, INC., a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> READY PAC FOODS, INC., a Delaware corporation, READY PAC PRODUCE, INC., a California corporation, and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 5:18-cv-2436 DDP (KKx) <br><br> **ORDER RE: DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> [Dkt. 17] |

Presently before the court is Defendants' Motion to Dismiss the First Amended Complaint. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

///

///

///

## I. BACKGROUND

Plaintiff Five Star Gourmet Foods, Inc. ("Plaintiff" or "FiveStar") is a California corporation with a principal place of business in Ontario, California. (First Amended Complaint ("FAC"), Dkt. 16, ¶ 8.) Plaintiff brings this cause of action against Defendant Ready Pac Foods, a Delaware corporation with a principal place of business in Irwindale, and Ready Pac Produce, Inc., a California corporation with a principal place of business in Irwindale (collectively, "Ready Pac" or "Defendants"). (FAC ¶¶ 9-10.)

Amongst other products not at issue here, FiveStar produces and distributes a "well established line of premium salads under the trademarked names 'Simply Fresh Salads,' and 'Simply Fresh Organic'" (collectively, "Simply Fresh salads"). (FAC ¶ 14.) FiveStar sells its Simply Fresh salads at "food retailers nationwide, including grocery stores, health food stores, membership-only warehouse clubs, and discount department stores in the state of California." (FAC ¶ 13.) FiveStar's Simply Fresh salads are "recognizable in the marketplace due to the trade dress it has used consistently since at least 2014."[1] (FAC ¶ 16.)

On December 23, 2014, FiveStar filed an application for a patent for "the ornamental design for a container and overwrap assembly used to sell two premade salads in one package." (FAC ¶ 17.) On October 25, 2016, the U.S. Patent and Trademark Office issued FiveStar patent No. D769,732, entitled "Container and Overwrap Assembly" ("'732 Patent"). (FAC ¶ 17, Exh. A.) "Since at least 2014," FiveStar has produced "one unified package using FiveStar's patented ornamental overwrap and stacked bowl assembly design" for sale in select retailers. (FAC ¶ 17.)

FiveStar alleges that in approximately October 2018, "Defendants began to produce, make, use, offer for sale, sell, and/or import a line of premade salads called

---

[1] A photographic image of FiveStar's Simply Fresh salads is included in the TAC. (TAC ¶ 16.)

2

'Bistro Organic' that utilized a virtually identical cardboard overwrap" to its Simply Fresh salads, "and particularly the organic varieties of FiveStar's line." (FAC ¶ 20.) FiveStar alleges that there is a "stark similarity" between its Simply Fresh salads' overwrap and Ready Pac's Bistro Organic salads' overwrap. (FAC ¶ 22.) This similarity, FiveStar alleges, is "compounded by Defendants' use of FiveStar's patented overwrap as depicted in the '732 Patent, as well as the fact that FiveStar's and Ready Pac's products are often displayed for purchase in the same manner, in the same refrigerated display case, side-by-side." (FAC ¶ 22.)

FiveStar's trade dress includes many features that compose its "unique layout of FiveStar's vertical sleeve." (FAC ¶ 16.) FiveStar alleges that Ready Pacs' overwrap design is "an extremely similar narrow, vertical cardboard sleeve and overall trade dress design." (FAC ¶ 6.) The complaint includes a side-by-side comparison of FiveStar's Simply Fresh salads and Ready Pac's Bistro Organic salads. (FAC ¶ 20.) FiveStar alleges that Ready Pac's continued production of premade salads infringes on its patent and has "resulted in irreparable harm to FiveStar's goodwill and business reputation with its consumers." (FAC ¶ 24.)

Based on the alleged facts above, FiveStar raises three causes of action: (1) Patent Infringement, 35 U.S.C. § 1, *et seq.*, (2) Trade Dress Infringement, 15 U.S.C. § 1051, *et seq.*, and (3) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*. Defendants now move to dismiss the First Amended Complaint under Rule 12(b)(6).

## II.  LEGAL STANDARD

### a. Rule 12(b)(6) Motion to Dismiss

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of

3

material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id*. at 678 (citations and internal quotation marks omitted).

## III. DISCUSSION

### a. Design Patent Infringement

FiveStar owns the '732 Patent and claims that Ready Pac's line of premade salad products infringe on its patent. (FAC ¶ 26; *see also* FAC ¶ 7, photographs of the design patent in FiveStar's Simply Fresh salad and of the accused infringing products.) Ready Pac does not challenge the sufficiency of the factual matter alleged. Rather, Ready Pac contends that the '732 patented design and its overwrap are "plainly dissimilar, such that FiveStar cannot prove a claim for design patent infringement." (Motion to Dismiss "MTD" at 6.) Ready Pac argues that the "First Amended Complaint was more than sufficient, and was sufficient to disprove infringement." (Reply at 2.)

A design patent is limited in scope to the novel, ornamental features of the patented design. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). In determining whether an accused product infringes a patented design, courts apply the "ordinary observer" test, which asks whether "if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same . . . ." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)). "[I]nfringement of a design patent is based on the design as a whole, not on any 'points of novelty.'" *Egyptian*

4

*Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc). Differences must be "evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation . . . the fact finder must apply the ordinary observer test by comparing the similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010)).

The determination of infringement of a design patent is a question of fact. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed. Cir. 2002); *see also Richardson*, 597 F.3d at 1295; *OddzOn Prods.*, 122 F.3d at 1405. "In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. Courts ordinarily do not dismiss a sufficiently pled patent design infringement claim "based on a comparison of the subject designs," *Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F. Supp. 3d 1181, 1186 (C.D. Cal. 2014), "unless the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them." *Enerlites, Inc. v. Century Prod. Inc.*, No. SACV18839JVSKESX, 2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018) (collecting cases).

As an initial matter, the court will not consider the side-by-side depictions of the patented design and photographs of the accused overwrap contained in Defendants' motion. (*See* MTD at 6-10.) "In ruling on a 12(b)(6) motion, a court may generally consider only the allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citing *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court may consider evidence "referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz*, 476 F.3d at 763. Ready Pac would have this court

5

consider photographs it took of its accused overwrap, at angles and proximities not included in the complaint, and to which their authenticity is disputed. (*See* Opposition "Opp." at 5-6.) The court declines to do so. FiveStar included sufficient photographs in the complaint and questions the authenticity of the photos submitted by Ready Pac. In any event, the limited question on a motion to dismiss is whether the claimed design and the accused product share sufficient visual similarity to plausibly allege design-patent infringement. The court can determine visual similarity based on photographs contained in the complaint.

Moreover, Ready Pac does not question the sufficiency of the FAC in pleading the five elements required to allege design patent infringement. Thus, the only question for this court is whether the claimed design and the accused product are sufficiently similar to plausibly allege design patent infringement. The court finds that the '732 patent design and Ready Pac's accused overwrap are sufficiently similar. Even if at this stage the court notes some dissimilarities between the claimed design and the accused design, such differences do not amount to a finding of plain dissimilarity. *See OddzOn Prods., Inc.*, 122 F.3d at 1405 ("The patented and accused designs do not have to be identical in order for design patent to be found.") Ultimately, determining infringement, and an ordinary observer comparison, are matters for the trier of fact. *See Catalina Lighting, Inc.*, 295 F.3d at 1287. The court finds that based on the allegations and the photographs in the complaint the designs are not so sufficiently distinct to warrant dismissal at this stage.

Ready Pac also contends that the FAC does not suggest that "Defendants knew of the patent . . . or continued use of the two-up overwrap after learning of the patent at any time prior to the filing of this suit." (MTD at 23.) The court finds that willful infringement is sufficiently pled. FiveStar alleges that "Defendants have been on notice of FiveStar's patent since at least October 2018." (FAC ¶ 28.) This suit was filed on

November 19, 2018, Dkt. 1, therefore, pre-filing knowledge of the patent is sufficiently pled.

The court denies Defendants' motion to dismiss the design patent infringement claim and the willful infringement claim.

**b. Trade Dress Infringement**

FiveStar asserts a second cause of action, for trade dress infringement, against Ready Pac. FiveStar alleges that ReadyPac's premade salads, Bistro Organic salads, have "an overall appearance and trade dress design that is confusingly similar to FiveStar's 'Simply Fresh' trade dress . . . ." (FAC ¶ 34.) Ready Pac contends that "[i]n some regards, the complaint provides more than is necessary for sufficient[] pleading . . . [such that,] the facts necessary for determination of non-infringement are pled." (Reply at 8.) Ready Pac argues that FiveStar cannot demonstrate (1) non-functionality, because the dress configuration is "dictated by statute, either directly or indirectly" and is therefore functional (MTD at 15); (2) based on the "purely informative or functional" trade dress elements, FiveStar cannot demonstrate secondary meaning (*see* MTD at 15); and (3) there can be no likelihood of confusion because the overwraps are so plainly dissimilar (MTD at 17).

The three basic elements of a trade dress claim are (1) non-functionality; (2) distinctiveness; and (3) likelihood of confusion. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). "Trade dress involves 'the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques.'" *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 808 n.13 (9th Cir. 2003) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n. 1 (1992)).

*1. Non-Functionality*

"Trade dress protection extends only to design features that are nonfunctional." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). A design feature

7

is functional "if the product feature is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). However, multiple functional items may be combined into a non-functional aesthetic whole. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987).

Ready Pac argues that "[t]he content, arrangement, and size of each item is dictated by statute or federal regulation . . . or dictated by whatever space is left over after mandatory elements are placed in mandatory arrangements," and is therefore functional. (MTD at 15-16.) It may be, as Ready Pac argues, that the features FiveStar identifies as its trade dress are primarily functional because they are dictated by statute, however, this is a question of fact. Because, ordinarily, the functionality inquiry is heavily fact-intensive, courts have held that this issue cannot be resolved at the motion to dismiss stage. *See Fuddruckers*, 826 F.2d at 843 (stating that functionality is a question of fact); *Morton v. Rank Am., Inc.*, 812 F. Supp. 1062, 1069 (C.D. Cal. 1993) (holding that question of functionality is a question of fact and cannot be decided as a matter of law at the motion to dismiss stage); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS, 2009 WL 55178, at *3 (N.D. Cal. Jan. 7, 2009) (denying motion to dismiss trade dress claim where defendants argued the concept of nesting boxes was functional). Therefore, the court's limited question at this stage is whether non-functionality is sufficiently pled. The court finds that it is.

    *2. Distinctiveness*

"An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive, or (2) has acquired distinctiveness through secondary meaning. *Two Pesos, Inc.*, 505 U.S. at 769. Descriptive trade dress, such as FiveStar's alleged trade dress here, acquires secondary meaning "when the purchasing public associates the dress with a particular source." *Fuddruckers*, 826 F.2d at 843. "'Whether a particular trade

8

dress has acquired secondary meaning is a question of fact . . .'" *Clicks Billiards, Inc.*, 251 F.3d at 1262 (quoting *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1382 n.3 (9th Cir.)).

Ready Pac appears to conflate its argument for non-functionality with distinctiveness. The court discerns in this argument, however, that it is Ready Pac's position that there can be no secondary meaning to the FiveStar overwrap because there is limited "possible useful locations of other informative text on the principal display panel . . . [and thus] no configuration can acquire distinctiveness." (MTD at 16.) Further, Ready Pac contends, "Any trade dress must reside in the tiny interstices remaining after legal and functional requirements are met." (*Id.*) The court finds these arguments unpersuasive. As FiveStar points out, the regulations Ready Pac points to do not dictate "placement, font style and size, colors, and overall appearance." (Opp. at 16.) The FAC sufficiently describes FiveStar's trade dress as including font styles, photographic depictions, and a description of the specific arrangement on each panel. Taking the factual allegations as true, the court finds that secondary meaning is sufficiently pled.

   3. *Likelihood of Confusion*

"'Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *Clicks Billiards, Inc.*, 251 F.3d at 1265 (quoting *Fuddruckers*, 826 F.2d at 845). Likelihood of confusion is "the most important element" of trade dress inquiry and the "ultimate issue is [] inherently factual." *Clicks Billiards, Inc.*, 251 F.3d at 1264-65. The trier of fact looks at various elements to determine likelihood of confusion, including "evidence of actual confusion, the defendant's intent in adopting the mark, similarity of the marks, similarity of goods and marketing channels, and the strength of the mark." *Id.* (citations omitted).

///

///

9

For the same reasons discussed above, the court will not consider the side-by-side photographs Ready Pac submits in its motion. FiveStar sufficiently pleads all the factual elements necessary for likelihood of confusion—Ready Pac does not dispute this sufficiency. Ready Pac's only challenge to likelihood of confusion, appears to be that the two goods, the Simply Fresh salads and the Bistro Organic salads, are plainly dissimilar. Even if this may be so, at the motion to dismiss stage, the court must also look to whether other factual elements are pled. They are. FiveStar pleads actual confusion, defendants' intent, marketing channels, and strength of its mark. (FAC ¶ 37.) Ready Pac does not discuss any of these factual allegations. Therefore, because likelihood of confusion is an intensely factual question, consisting of all of the factual elements identified above, the court declines to dismiss based solely on the similarity of the goods element. The court finds that likelihood of confusion is sufficiently pled.

In conclusion, the court denies Defendants' motion to dismiss the trade dress claim.

### c. Unfair Competition Claim

FiveStar's third claim, for unfair competition, arises from the same alleged misconduct that underlies its first two claims. (FAC ¶¶ 43-47.) Of importance though, FiveStar concedes that its claim of unfair competition is "not dependent on its federal design patent infringement claim." (Opp. at 18.) Ready Pac argues, nonetheless, that FiveStar's unfair competition claim is preempted by the federal trade dress claim. (Reply at 9.) Ready Pac does not cite any authority to support its position. Moreover, the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Clearly v. News Corp.*, 30 F.3d 1255, 1262-63 (1994). In other words, federal trademark claims do not preempt California unfair competition claims. Therefore, the court denies Ready Pac's motion to dismiss the unfair competition claim.

10

## IV. CONCLUSION

Defendants' Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: March 18, 2019

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

11